A. T. DRINNON v. KATHRYN M. WILLIS, Admx., et al.

Eastern Section. March 19, 1932.

Petition for Certiorari denied by Supreme Court, June 4, 1932.

Bowen & Bowen, of Knoxville, for appellant.
Ben H. Testerman, of Knoxville, for appellee.

FAW, P. J. The complainant in this case, A. T. Drinnon, is a lawyer, residing and practicing his profession at Morristown, in Hamblen County, Tennessee. He brought this suit in the Chancery court of Knox County, on June 24, 1930, seeking a judgment against .Kathryn M. Willis, administratrix of the estate of C. D. Willis, deceased, and a resident of Knox County, and W. A. Vann, a resident of Greene County, for the sum of $85, and costs of suit.

In his bill. complainant alleges that the defendants are justly indebted to him in the sum of $85 for professional services rendered

to C. D. Willis, the intestate of defendant administratrix, and the defendant W. A. Vann, in the lifetime of the said C. D. Willis and just prior to his death; that defendant Kathryn M. Willis has been duly appointed and qualified as such administratrix in the County Court of Knox County, Tennessee, and is still acting as such; that said account for professional services thus rendered is justly due complainant, long past due, and wholly unpaid, and complainant filed as Exhibit "A" to his bill a statement of said account duly sworn to by complainant in Hamblen County and verified by the signature and seal of a notary public of said County of Hamblen and complainant stated that said account is sued on in this cause (in Knox County) as a duly proven account coming from and duly proven in Hamblen County, Tennessee.

Defendant Kathryn M. Willis, administratrix, filed a separate answer to complainant's bill, in which answer she admitted that she is administratrix of the estate of said C. D. Willis, duly appointed and qualified as such in the County Court of Knox County, Tennessee, and that she is still acting as such; but she did not admit any other allegations of the bill.

An affidavit of Kathryn M. Willis was appended to her answer, by which affidavit she made oath that so much of her foregoing bill (answer) as denies the account sued on by complainant is true, and that said account is not just or correct in whole or in part.

That part of said answer to which the oath of Kathryn M. Willis relates is as follows:

"This defendant specifically denies that she as administratrix of the estate of C. D. Willis, or otherwise, is justly indebted to the complainant in the sum of eighty-five ($85) dollars, or any other sum or sums whatever, for professional services alleged to have been rendered to the said C. D. Willis and W. A. Vann during the lifetime of the said C. D. Willis, and just prior to his death; on the contrary this defendant avers that if the complainant ever at any time rendered any professional services for her deceased husband, or for his benefit, that she has no information touching said matter, and she demands strict proof thereof, insofar as her rights and interests herein are concerned as administratrix of the estate of the said C. D. Willis, deceased."

Defendant W. A. Vann did not answer or otherwise offer to defend, and complainant's bill was taken for confessed as to him.

Proof was taken on behalf of complainant Drinnon and defendant administratrix, respectively, and upon the pleadings and proof the Chancellor, on final hearing, dismissed complainant's bill as against Kathryn M. Willis, administratrix, but rendered judgment

in favor of complainant and against W. A. Vann for $85 and all the costs of the cause, for which execution was awarded.

The complainant excepted to the action of the court in refusing a recovery against the defendant Kathryn M. Willis, administratrix, and from that part of the decree dismissing the bill as to the administratrix complainant prayed, obtained and perfected an appeal to this court and has assigned errors here.

The proof in the case consists of the depositions of Gay Clark, City Recorder of Morristown (with an exhibit thereto), complainant A. T. Drinnon and J. E. Burke, Mayor of Morristown, on behalf of complainant, and the deposition of defendant W. A. Vann on behalf of defendant administratrix.

The deposition of complainant A. T. Drinnon is in narrative form and is in full as follows:

"I live at Morristown, Tennessee. I am a lawyer by profession.

"Sometime on or about the first of the year of 1929, a Mr. W. A. Vann, who purported to be representing himself and Mr. C. D. Willis, employed me to locate a desirable lot or tract of land in the City of Morristown suitable for an erection of a tobacco warehouse, and, as a result of that employment I negotiated with a number of people. I recall that we went to see Mr. Frank Taylor, Mr. J. R. Forgey, the executors of the estate of W. H. Mullins, a Mrs. Manly, a Mr. Doka and Mr. Barto Fisher, all of these parties owned lots that Mr. Vann was interested in but for some reason or other could not reach an agreement as to the price or terms and finally thought we had bought a lot from Mr. Charles Stephens, who was representing a Mrs. Hodge, who lived in Florida, but, on being turned down on this property, at my suggestion, I took up the matter of buying a lot from the City of Morristown, which was situated on Main Street in West End and which Mr. Willis and Mr. Vann both said was the most desirable place in Morristown for a tobacco house.

"I never met or talked with Mr. Willis but once and that was while we were negotiating with the City of Morristown and which they finally agreed to purchase and the Board of Mayor & Aldermen agreed to sell the one mentioned and described in the resolution passed by the Mayor & Aldermen, a certified copy of which is filed as Exhibit 'A' to the deposition of Mr. Gay Clark.

"Mr. Willis came to my home and asked me to show him the property and we went over the matter in detail and he told me there was a land bargain in that lot and to buy it, if I could

possibly get it, and I bought the lot for $500 cheaper than they thought they would have to pay for it, and got fifteen feet given for street in addition, and the parties were very well pleased with services rendered.

"I never had any conversation with Willis as to being employed to represent him, as I knew I represented him along with Vann, neither did I have a contract with either as to how much I was to be paid for my services, but I spent about two months negotiating with different parties for this lot, and Mr. Willis knew all about it and approved of the purchase of the lot that was contracted for.

"I was present and had the Board of Mayor & Aldermen to execute a deed for the property. Mr. Vann suggested that Mr. Willis wouldn't buy or accept a deed unless they had an abstract and plat, so at the suggestion of Mr. Vann, I had the city to furnish a plat and an abstract of the property, all of which was approved. We had an agreement whereby we would meet on Monday, the exact date I do not remember, and the deed was made, acknowledged, and ready to be delivered, the terms were all agreed upon and the transaction was to be complete on a certain Monday, on Sunday morning prior to the Monday agreed to meet and settle this matter I read in the paper that Mr. C. D. Willis was killed in an automobile accident on Saturday night prior thereto, and Mr. Vann notified the Board of Mayor and Aldermen that Mr. Willis had been killed and he couldn't take the property, but they turned the contract over to other parties who did take the property as I am informed upon the same terms and conditions.

"After this I discussed with Vann as to the amount that would be due me for my services and expenses, as I had incurred considerable expenses in calling him over the telephone and reporting each day just what progress I had made, and I told Mr. Vann it was my intention to have charged them $100 for my services but since Mr. Willis had been killed and the deal didn't go through, I would take one-half and settle with him for $50, which he agreed to pay. The city through its authorities suggested that they were going to hold me liable for the abstract and the making of the deed, and I asked Mr. Vann about this and he agreed to pay $35 for the abstract, provided they would not hold him to the contract to purchase and at the recommendation and suggestion of Mr. Vann, I agreed that we would pay them $35, rather agreed that Willis and Vann would.

"I have never paid this $35. It has not been paid by anyone. Willis and Vann have never paid me anything for my services.

My services were well worth $100 and if I had known they had hesitated and there had been any dispute over it, I certainly would have sued for $100 just what I was entitled, I brought my suit accordingly.

"I never discussed the amount of fee to be paid with either of the parties until after the death of Mr. Willis and in fact I never did mention to Mr. Willis anything about what I would charge them or whether he would pay me anything or not, but I assumed all the time that he understood I was not working for nothing."

The Chancellor sustained an exception to all the foregoing deposition of complainant Drinnon concerning the conversations and transactions between the witness and the deceased, C. D. Willis, as being incompetent under section 5598, Shannon's Annotated Code of Tennessee.

The resolution mentioned in the deposition of complainant, supra, of which a certified copy was filed as Exhibit "A" to the deposition of Gay Clark, reads (with the description of the property omitted) as follows:

"The Board of Mayor and Aldermen of the Town of Morristown met in called session on March 27, 1929, at seven P. M., in the office of the Recorder, present and presiding Honorable James E. Burke, Mayor, and all of the Aldermen, namely W. R. Toney, O. R. Marshall, Harris Havely and T. R. Brooks, when the following proceedings were had, to-wit:

"The Mayor reported that C. D. Willis and W. A. Vann, had made him and Alderman Marshall a proposition to purchase a portion of the lot owned by the City in the West end of town, beginning" (here follows description) "at and for the price of $4500, to be paid as follows, $500 cash; note for $1000 due sixty days after date without interest; two notes for $1500 cash with interest from July 1, 1929, due one and two years after date, respectively, with lien retained to secure payment of all deferred payments.

"Alderman Havely moved the acceptance of said proposition and that the mayor be authorized to execute the deed on behalf of the mayor and aldermen of the town of Morristown, which deed shall be attested by the Recorder, Gay Clark, who will fix the seal of the Corporation thereto, which motion was seconded by Alderman Toney and upon the motion being put on roll call all of the Aldermen voted 'aye,' none voting 'no,' and the mayor declared the motion carried.

"On motion and second it was ordered that the city attorney prepare an abstract for the purchasers of the lot in the west end of the city."

488

We quote a part of the deposition of J. E. Burke, Mayor of Morristown, as follows:

"Q. Were you mayor about March, 1929, at the time the Board of Mayor and Aldermen entered into a contract to sell to Mr. Willis and Vann certain property in the City of Morristown and belonging to the City of Morristown, upon which they proposed to build a tobacco warehouse? A. Yes sir.

"Q. Do you know who represented said Willis and Vann at that time? A. They told me that you did. (Mr. Drinnon.)

"Q. Do you know who first talked to you about it and who introduced them to you? A. You did. (Mr. Drinnon.)

"Q. Do you remember talking to Willis about it? A. Yes, I went out to the grounds with them and you one Sunday."

The cross-examination of Mayor Burke is as follows:

"Q. All these negotiations were carried on by A. T. Drinnon representing these parties? A. Yes sir.

"Q. Mr. Burke, you don't know anything about who employed Mr. Drinnon in the matter or not to represent Mr. Vann and Willis? A. Mr. Vann and Willis told me if we could get the deal thru to call Mr. Drinnon and he would advise them."

Defendant W. A. Vann, in his deposition, admitted that complainant Drinnon had rendered legal services for him (Vann) and that he owed complainant for same as claimed by complainant, and that he (Vann) had not paid the debt because of "lack of money"—that he had no property exempt from execution out of which a judgment could be collected.

We quote parts of the deposition of Vann as follows:

"Q. You had the negotiations with Mr. Drinnon with refference to this matter? A. I did.

"Q. Did Mr. Willis have any negotiations with him, or any thing to do with it? A. No.

"Q. Just go ahead and state what connection, if any, Mr. C. D. Willis had with the transaction. A. Mr. Willis, in this transaction would hold the same place, or would be in the same position as any one else that I might borrow money from. In other words, Mr. Willis was financing the transaction. He was to put up the funds.

"Q. As a security for the loan? A. Yes sir.

"Q. What relation are you to Mr. Willis? A. I am a nephew.

"Q. You employed Mr. Drinnon in connection with the transaction? A. Yes.

"Q. Did Mr. Willis have anything to do with the deal? A. No, he did not know Mr. Drinnon, not that I know of.

"Q. Did he in any way authorize you to engage Mr. Drinnon on his behalf? A. No.

"Q. Has Mr. Drinnon been paid for his services? A. No.

. . . . . .

"Q. Now as a matter of fact, Mr. Vann you do not know whether Mr. Willis had any talk or negotiations with Mr. Drinnon? A. If he did, he never mentioned it to me in our conversations.

"Q. All you can say is that you don't know? A. I don't know.

"Q. Were you present when the agreement was finally agreed upon between you and Mr. Willis on the one hand and the Board of Mayor on the other? A. Mr. Willis and myself were never together in Morristown.

"Q. You do not know whether Mr. Willis ever appeared before the Board of Mayor and Aldermen in regard to the matter? A. I am practically positive that he did not.

"Q. All you can say is that you do not know? A. Yes.

. . . . . .

"Q. How do you suppose that the Mayor and Alderman Marshall knew anything about C. D. Willis? A. In my conversation with Mr. Drinnon I probably several times spoke of Mr. Willis as the man I was getting the money from, and he evidently told Mr. Burke.

"Q. Then evidently, in your understanding of the matter, Mr. Burke must have been the one that told the Mayor and Alderman Marshall that he had talked with Mr. Drinnon and that you and Mr. Willis were purchasing this property, otherwise it would not have been in this report. A. Probably so.

. . . . . .

"Q. Did you give Mr. Drinnon instructions as to what parties were taking title to said property? A. I told him to make the deed to W. A. Vann and C. D. Willis.

"Q. Did you tell him you wanted the property vested in Mr. Willis and you personally? A. Well, in the course of conversation I might have explained to him that everything would be held jointly, or rather the property would be held by him as security.

"Q. Was Mr. Willis to furnish the money? A: Every penny. Yes, that is practically, I should say.

"Q. Did Mr. Drinnon have any right to assume that C. D. Willis was to pay any part of the expenses from the conversation that you had with him about the matter? A. No.

"Q. You did not tell him that you were purchasing it for yourself and C. D. Willis? A. No, I did not tell him who I

was purchasing it for, until the time for the deed to be drawn, and then I told him to put it in my name and the name of Mr. Willis."

Appellant's first assignment is that the Chancellor erred in sustaining the exceptions to the testimony of the complainant. In support of this assignment it is said that the exceptions were too general in their nature and did not refer to any specific or particular item of testimony excepted to, and, therefore, could not be noticed.

The exception was written on the margin of complainant's deposition at the foot thereof, and is as follows:

"The defendant hereby excepts to all the foregoing testimony concerning the conversations and transactions between the witness, A. T. Drinnon—the complainant—and the deceased being incompetent under section 5598, Shannon's Annotated Coe of Tennessee."

It appears from a marginal notation by the Chancellor that the exception was "sustained."

For obvious reasons, a complaint in the appellate court that an objection to testimony is "too general" does not have the same force when directed to the action of the trial court in sustaining an objection as when the objection is overruled. A similar question was presented in the case of Wade v. Whitsitt, 9 Tenn. App., 436, 445, and we there said:

"We are also of the opinion that the assignment should not be sustained on the ground that 'no objections were made to specific matters' (if by that is meant that the objections should have been overruled because they did not, in each instance, set out ipsissimis verbis the testimony to which the objection was made). The objectionable line of testimony was clearly indicated and the objectionable statements, although interspersed with competent testimony on other subjects, may, in this case, be easily identified and segregated."

For the reasons thus stated in Wade v. Whitsitt, supra, the first assignment of error in the instant case is overruled.

The appellant's second, and last, assignment is, in substance, that the learned Chancellor reached an erroneous conclusion upon the facts of the case; that he erred in dismissing the bill as to the administratrix; that he should have granted complainant a recovery against the defendant administratrix as well as against defendant Vann.

We are of the opinion that the second assignment of error is well made and should be sustained. We think the weight of the proof shows that Vann was the authorized agent of C. D. Willis in the employment of complainant Drinnon. It is true that an agent's authority cannot be shown by his own statements made out of court,

or merely by proving that he claimed or undertook to act as agent for an alleged principal; but if there is independent evidence tending to prove an agency, it is competent to prove all the acts of the alleged agent pertaining to the business, as well as his declarations that he was acting as agent in the particular transaction, and the order of proof is not necessarily rigid. An agency, like any other fact, may be proved by circumstances and by evidence of the conduct of the parties, such as by showing that the alleged principal knew of the acts of the alleged agent and assented to them. Wade v. Whitsitt, supra, pp. 446-449; Jones on Evidence (2 Ed., 1926), sections 944-945, pp. 1741-1749; Mechem on Agency (2 Ed.), sections 285 and 289.

In the instant case, it is shown by the testimony of Burke that Willis went to Morristown and (in company with Drinnon) examined the property which the city was proposing to sell, and told Burke that Drinnon was representing him (Willis) and Vann, and also directed Burke to call Mr. Drinnon and he would advise them (the mayor and aldermen), if they could get the deal through.

It is an admitted fact that Willis was proposing to furnish all the money to purchase the property and, therefore, had more financial interest in the "deal" than any other person.

The testimony of Mayor Burke, in connection with the admitted facts and circumstances, is sufficient "independent evidence tending to prove an agency" to render competent the evidence of Drinnon and his witnesses with respect to the acts and declarations of Vann which tended to show that he (Vann) was the agent of Willis in the transaction here in controversy.

The appellant's second assignment of error is sustained, the decree of the chancery court is reversed, and a decree will be entered here granting a recovery in favor of complainant Drinnon and against defendant Kathryn M. Willis, as administratrix of the estate of C. D. Willis, deceased, for the sum of $85, with interest thereon from the date of the decree of the chancery court, viz: February 24, 1931, and for all the costs of the cause, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.